UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x
PARAMIA SMITH,

        *Plaintiff*,

    -against-

NANCY A. BERRYHILL,
Commissioner of Social Security

        *Defendant*.

---------------------------------------x

**ORDER**
16-CV-6502(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), plaintiff Paramia Smith ("plaintiff" or "Smith") appeals the final decision of the Commissioner of Social Security ("defendant"), which found plaintiff ineligible for disability insurance benefits under Title II and Title XVI of the Social Security Act ("the Act"), on the grounds that plaintiff is not disabled within the meaning of the Act. Before the court are the parties' cross-motions for judgment on the pleadings. (*See* ECF No. 21, Not. Def.'s Mot.; ECF No. 22, Def.'s Mem. Law; ECF No. 22-1, Jt. Stip. Facts ("Stip."); ECF No. 23, Pl.'s Mot.; ECF No. 24, Pl.'s Mem. Law; ECF No. 25, Administrative Tr. ("Tr.").)

        Plaintiff alleges that she is disabled within the meaning of the Act and is thus entitled to receive the aforementioned benefits. In support, plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to consider

all the medical evidence and failing to appropriately apply the treating physician rule.  Plaintiff further argues that the ALJ failed to fully develop the record because she did not make efforts to obtain or clarify all of the medical opinions of plaintiff's treating physicians.  For the reasons set forth in this Order, plaintiff's motion for judgment on the pleadings is DENIED, but plaintiff's alternative motion to remand for further administrative proceedings is GRANTED.  Defendant's motion for judgment on the pleadings is DENIED.

## BACKGROUND

I.    **Procedural History**

Paramia Smith applied for supplemental security income ("SSI") and disability insurance benefits ("SSDI") from the Social Security Administration ("SSA") on June 12, 2013, on the basis of dementia, anemia, and diabetes.  (Tr. 61, 131, 144.) Ms. Smith asserted that her disability began on June 1, 2012. (Tr. 112, 114.)  Her application was denied on October 11, 2013. (Tr. 46, 56.)  On November 1, 2013, Ms. Smith requested a hearing.  (Tr. 73.)  The hearing was scheduled for April 16, 2015 before ALJ Gitel Reich.  (Tr. 99, 103.)  Ms. Smith appeared *pro se* at that hearing.[1]  (Tr. 24, 25.)  On April 23, 2015, ALJ Reich found that Ms. Smith was not disabled and denied her

---

[1]    Though Ms. Smith appeared *pro se* before the ALJ, she is represented by counsel in this action.

claims for disability benefits and supplemental security income.
(Tr. 16-17.)  Ms. Smith requested review of ALJ Reich's decision
on May 5, 2015, and the SSA's Appeals Council denied review on
October 5, 2016.  (Tr. 1, 4.)  Accordingly, the ALJ's decision
became final and this action ensued.

## II.    Factual Background

### A.    Plaintiff's Non-Medical History

Ms. Smith is 36 years old.  (Tr. 112.)  She graduated
from high school in 2001.  (Tr. 145.)  She performed data entry
at an airport for Swissport Cargo Services from approximately
2005 to 2008, worked as a cashier at McDonald's for an unknown
period of time, and then at a beauty supply store for a few
months in 2012, before her employment was terminated in June
2012, when she "had a seizure and . . . fell over the counter."
(Tr. 26, 126-28, 145.)  She stopped working thereafter.  (Tr.
201-02.)  Plaintiff has never been married and lives in an
apartment in East New York with her 12-year-old daughter.  (Tr.
114-15.)  Her sister, Gertrude Smith, lives close by, and
provides necessary assistance.  (Tr. 143.)

### B.    Plaintiff's Testimony

Plaintiff testified at the hearing held on April 16,
2015.  (Tr. 26-35.)  Prior to the hearing, the ALJ obtained a
waiver of representation from plaintiff.  (Tr. 24-25.)
Plaintiff noted that she understood her rights and wished to

proceed *pro se*. (*Id.*) She testified that she last worked in 2012 as a cashier at a beauty supply store; until she had a seizure and fell over at work and was subsequently terminated. (Tr. 26.) Plaintiff testified that she had seizures and diabetes. (Tr. 29-31.) She testified that she experienced about two seizures a month throughout 2015, and two or three seizures a week in 2014. (Tr. 29.) According to plaintiff, witnesses described her seizures as causing her to shake and her eyes to roll back, and sometimes she fell unless another person was there to catch her. (Tr. 29-30.) Plaintiff stated that her seizures lasted for five to six minutes at most. (Tr. 30.) She said she felt normal again within ten minutes of her seizures and could continue with whatever she was doing prior to the seizure. (*Id.*) Plaintiff testified that she cooked for her daughter sometimes, did laundry, helped her daughter with personal care, assisted with her daughter's homework, put her daughter to bed, and attended open school nights. (Tr. 27, 31.) She generally did not leave the house without someone accompanying her, such as when she took her daughter to the doctor or when her friend accompanied her to the hearing on public transportation, though she occasionally went to the corner store by herself. (Tr. 27, 31, 29, 28.) Plaintiff testified that she had looked for work at a different beauty supply store after she was fired, but she was not hired after

4

she told them what happened at her last job.  (Tr. 33.)  She also testified that she was not hired by a potential employer for a data entry position.  (*Id.*)  Plaintiff reported generally having trouble remembering events.  (Tr. 34.)  She testified to sometimes having no recollection of periods of time spanning a week, including her own actions and those of her family members.  (*Id.*)

### C.  Plaintiff's Relevant Medical History

As part of the claim process, plaintiff completed an assessment and examination by a physician employed by FEDCAP, a federally funded non-profit that provides vocational services to youth and adults with certain disabilities, and had several consultative examinations from medical professionals.  The record also reflects medical evidence submitted by two physicians who had regularly treated plaintiff.

#### 1.  FEDCAP-WeCARE Interview and Assessment

On March 31, 2013, Lee Yang, M.D., conducted a phase I physical examination for FEDCAP-WeCARE, a program run by the New York City Human Resources Administration ("HRA").  (Tr. 208-17.)  Dr. Yang noted that plaintiff experienced memory loss.  (Tr. 211.)  Dr. Yang also noted that plaintiff had exertional work limitations in lifting, standing, walking, pushing, pulling, reaching, kneeling, squatting, and maintaining posture, and had non-exertional limitations in her communication, cognition,

temperament, and respiratory capacity. (Tr. 215-17.) In her diagnostic summary, Dr. Yang classified Plaintiff's diabetes mellitus as "unstable," her anemia as "stable," and her "general symptoms" as unstable, untreated, and affecting her employment." (Tr. 218-19.)

On May 31, 2013, plaintiff was interviewed by Intake Specialist T'tsawainiyah Yisrael as part of a biopsychosocial assessment for FEDCAP-WeCARE. (Tr. 193-203.) Plaintiff reported suffering from diabetes, for which she took Metformin; anemia; vitamin B deficiency; blackouts; and memory loss; and claimed to have been hospitalized in the past for diabetes and "blacking outs (sic)." (Tr. 196-97, 203.) Plaintiff indicated she experienced no difficulty walking, climbing stairs, hearing, seeing, bathing and dressing, grooming, using the bathroom, preparing her meals (eating, cooking, and shopping), housekeeping such as washing dishes or clothes, and general house cleaning. (Tr. 200.)

### 2. Consultative Examinations

At the Commissioner's request, Christopher Flach, Ph.D., performed a consultative psychiatric evaluation of plaintiff on September 24, 2013, in connection with her applications for benefits. (Tr. 222-25.) Plaintiff said she had "some anemia" and a seizure disorder, which started in 2004, and that she saw a neurologist at least once a month. (Tr.

6

222.)  She also reported her history of diabetes.  (*Id.*)
Plaintiff cooperated in her mental status evaluation and
presented with adequate social skills.  (Tr. 223.)  Dr. Flach
opined that plaintiff's cognitive functioning was below average.
(Tr. 224.)  Dr. Flach diagnosed Ms. Smith with: anxiety
disorder; a history of seizures; a history of gallbladder
removal; diabetes; concentration problems; and iron deficiency
or anemia.  (*Id.*)  He recommended that she continue her course
of medical treatment and counseling as needed, and noted that
her prognosis seemed "fair to good."  (*Id.*)

Another consultative examiner, Susie Chow, D.O.,
performed an internal medicine examination of plaintiff on
September 24, 2013, in connection with her benefits
applications.  (Tr. 227-32.)  Plaintiff reported being diagnosed
with a seizure disorder in August 2013, following an
electroencephalogram ("EEG").  (Tr. 227.)  She reported a
history of diabetes since age 20.  (*Id.*)  Plaintiff also reported
she was last hospitalized for diabetes in May 2013, when she was
admitted overnight due to elevated blood sugar and memory
impairment.  (*Id.*)  Dr. Chow diagnosed Ms. Smith with
hypertension, diabetes mellitus, seizure disorder, anemia, and

history of cholecystectomy, or a removed gall bladder.[2]  (Tr.
230.)  She opined that plaintiff had no physical limitations,
but should avoid heights, driving, or operating heavy machinery.
(*Id.*)

On October 11, 2013, M. Skoraszewski, Ph.D., a State
agency psychological consultant, reviewed Ms. Smith's medical
history and completed a psychiatric review.  (Tr. 42-44, 51-53.)
Dr. Skoraszewski concluded that plaintiff's impairments, alone
or in combination, did not meet or equal the criteria for an
impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1,
(the "Listings of Impairments" or "Listings") and specifically
considered section 12.06 (affective disorders) of the Listings.
(Tr. 42, 51-52.)  With respect to the so-called "B" criteria of
the Listings, Dr. Skoraszewski opined that Plaintiff had mild
restrictions of activities of daily living, mild "difficulties
in maintaining social functioning," and mild difficulties in
"maintaining concentration, persistence or pace," with no
repeated episodes of decompensation.  (Tr. 42, 51.)  Dr.
Skoraszewski opined that plaintiff could engage in simple work
tasks, allowing for plaintiff's exertional limitations due to
her history of anemia, seizures, and diabetes, and environmental
limitations due to her history of seizures.  (Tr. 44-45, 52-54.)

---

[2]     *Cholecystectomy (gallbladder removal)*, Mayo Clinic,
https://www.mayoclinic.org/tests-procedures/cholecystectomy/about/pac-
20384818, last accessed August 16, 2019.

Also on October 11, 2013, T. Monroe, a disability
examiner for New York's Disability Determination Services,
assessed Ms. Smith's residual functional capacity ("RFC"). (Tr.
37-38, 44-45, 53-54.) T. Monroe similarly concluded that Ms.
Smith had some exertional and environmental limitations due to
her anemia, diabetes, and history of seizures. (Tr. 44-45, 53-
54.) Monroe opined that Ms. Smith could occasionally lift or
carry up to 20 pounds, could frequently lift or carry up to 10
pounds, and could walk or stand for a total of about six hours
of an eight-hour workday. (Tr. 44, 53.) Monroe did not find
any additional limitations with respect to pushing or pulling,
but noted that Ms. Smith should avoid concentrated exposure to
"fumes, odors, dusts, gases, poor ventilation, etc." and should
avoid moderate exposure to hazards such as machinery and working
at heights. (Tr. 44-45, 53-54.)

### 3. SUNY Downstate Medical Center Monitoring

Also in connection with plaintiff's claim, she
underwent video EEG monitoring for seizures as an inpatient at
SUNY Downstate Medical Center from November 19 through November
23, 2014.[3] (Tr. 238-41.) Arthur Grant, M.D., the attending
physician, made a primary diagnosis of localization-related
epilepsy and secondary diagnoses of memory impairment, diabetes

---

[3] *EEG (electroencephalogram)*, Mayo Clinic,
https://www.mayoclinic.org/tests-procedures/eeg/about/pac-20393875, last
accessed Aug. 16, 2019.

mellitus, and hypertension.  (Tr. 238.)  Plaintiff was
discharged with instructions to restrict her activity by not
swimming without supervision, and not playing or working at
unprotected heights.  (Tr. 239-40.)  Ms. Smith was also
instructed to follow up with Dr. Laurent in the Neurology
Department at Interfaith Hospital.  (Tr. 240.)

### 4.  Treating Physicians

In addition to the consultative examinations, plaintiff
has a history of treatment from two physicians, Dr. Sylvia
Gonzales, M.D., and Dr. Bordes Laurent.

#### i.  *Dr. Gonzales*

On May 20, 2013, Dr. Sylvia Gonzales, M.D., wrote a
letter stating that Ms. Smith was under her care and had been
diagnosed with insulin dependent diabetes, vitamin B deficiency,
memory impairment, and anemia.  (Tr. 252.)  In her May 31, 2013
report, Yisrael noted that Dr. Gonzales was plaintiff's internal
medicine doctor.  (Tr. 197.)

On March 30, 2015, Ms. Smith visited Dr. Gonzales's
office.  (Tr. 252.)  During that visit Dr. Gonzales noted that
plaintiff had been under her care for the past 10 years.  (*Id.*)
Dr. Gonzales indicated that plaintiff had developed severe
insulin-dependent diabetes, mental status changes with poor
memory, and that her memory loss had been diagnosed as early
Alzheimer's disease.  (*Id.*)  When Ms. Smith's condition did not

progress as the disease typically would, plaintiff was re-evaluated and diagnosed instead with seizure disorder. (*Id.*) Dr. Gonzales stated that plaintiff was forgetful, needed assistance with daily living activities, and that plaintiff could not function or maintain a job. (*Id.*)

ii. *Dr. Laurent*

In a letter dated March 31, 2015, Dr. Bordes Laurent wrote that Ms. Smith was being treated for uncontrolled epilepsy by the neurology clinic at Interfaith, and had been visiting the clinic since July 2, 2013. (Tr. 251.) This letter also indicates that plaintiff's medications were being adjusted to control her seizures, that plaintiff "may not be able to work" because her seizures were not adequately controlled, and that she would be re-evaluated periodically. (*Id.*)

## DISCUSSION

Plaintiff argues that the Commissioner's decision is flawed because: (1) the ALJ failed to properly accord controlling weight to the medical opinions of Drs. Gonzales and Laurent; and (2) the ALJ failed to fully develop the record and evaluate plaintiff's credibility with a fully developed record.

## I.   Standard of Review

### A.   Substantial Evidence

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of

11

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). Substantial evidence requires "more than a mere scintilla" and refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation mark omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In addition, an evaluation of the "substantiality of evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

Accordingly, if there is substantial evidence in the record to support the Commissioner's factual findings, those findings are conclusive and must be upheld. *See* 42 U.S.C. § 405(g). Moreover, the reviewing court "may not substitute its own judgment for that of the [ALJ], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v.*

*Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

**B.    Five-Step Evaluation Process for Determining Disability**

A claimant is disabled within the meaning of the Act if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be of "such severity that [the claimant] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A). The Commissioner follows a "five-step sequential evaluation" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  If at any step, the ALJ finds that claimant is either disabled or not disabled, the inquiry ends at that step. *Anderson v. Colvin*, No. 15-CV-6720, 2017 WL 1166350, at *6 (E.D.N.Y. Apr. 3, 2017).  A claimant bears the burden of proof in the first four steps, at which point the burden shifts to the Commissioner in the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not currently engaged in substantial gainful employment, then the Commissioner proceeds to step two to determine whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). An impairment "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 416.908. An impairment is severe if it "significantly limits [claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is medically severe under step two, then the Commissioner will move to step three.

At step three, the Commissioner determines whether the claimant's impairments are found in the Listings of Impairment. *Id.* § 416.920(a)(4)(iii). If a claimant's condition "meets or equals" one of the "listed" impairments, as well as the SSA's duration requirement, he or she is *per se* disabled and entitled to benefits, irrespective of his or her "age, education, and work experience," and the sequential evaluation ends. *Id.* § 416.920(d). If not, the ALJ must then determine the claimant's residual functional capacity ("RFC") before continuing to step four. *Puccio v. Colvin*, No. 15-CV-06941, 2017 WL 1232488, at *3

(E.D.N.Y. Mar. 31, 2017).

A claimant's RFC is the level at which she can function despite her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a). In determining the RFC, the ALJ must weigh all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *Id*. § 404.1545; *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). To the extent that the Commissioner's RFC determination relies on the claimant's allegations of impairment-related symptoms, the Commissioner must evaluate those symptoms using a two-step process. *See* SSR 16-3P, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the Commissioner must determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. Second, the Commissioner must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which those symptoms limit her ability to perform work-related activities. *Id*. at *4. When considering a treating physician's medical opinion, the ALJ may afford substantially less weight when the opinion is inconsistent with the treating physician's examination findings. *See Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. 2014); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d

15

Cir. 2013).

After determining a claimant's RFC, the Commissioner proceeds to step four to determine whether the claimant's RFC is sufficient to perform his or her "past relevant work," which is defined as substantial gainful activity that the claimant has done within the past fifteen years. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(b)(1). If the claimant can perform her past relevant work, the claimant is not disabled. *Id.* § 416.920(f). If the claimant cannot perform her past relevant work, the Commissioner will move to step five, where the Commissioner must determine whether—given the claimant's RFC, age, education, and work experience—the claimant has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the claimant can perform other work, the claimant is not disabled.

## II. ALJ's Disability Determination

In deciding Ms. Smith's application for benefits, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since June 1, 2012, her alleged onset date. (Tr. 11.) At step two, the ALJ found that Ms. Smith suffered from the severe impairments of diabetes mellitus, localized-related epilepsy, and memory loss/Alzheimer's disease. (*Id.*) The ALJ also found that Ms. Smith's anemia and hypertension were not severe impairments, as they did not result

16

in more than minimal limitations.  (*Id*.)  At step three, the ALJ
found that Ms. Smith did not have an impairment or combination
of impairments that met or medically equaled the severity of one
of the impairments in the Listings.  (Tr. 12.)  The ALJ found
that Ms. Smith's diabetes mellitus was under "fair control" but
that there was no evidence that she would be unable to manage
her diabetes due to any mental disorder or inadequate treatment.
(*Id.*)  The ALJ thus found that Ms. Smith's impairments did not
qualify as sufficiently severe to meet or medically equal any of
the impairments in the Listings.  (*Id*.)  Accordingly, the ALJ
determined Ms. Smith's RFC and concluded that Ms. Smith could
perform light work, which should be limited to simple, routine,
and repetitive tasks, with frequent, but not constant, contact
with people, and no work at heights, with dangerous machinery,
or with motor vehicle operation.  (*Id*.)

        In determining plaintiff's RFC, the ALJ assigned
"considerable weight" to the opinions of the consultative
medical examiners because "a review of their records show that
they gave claimant a thorough evaluation, their opinions are
consistent with the results of their examinations of the
claimant [and] their opinions are consistent with the objective
medical evidence."  (Tr. 15.)  The ALJ assigned some weight to
Dr. Skoraszewski's opinion that plaintiff could do simple work
because it was "consistent with the evidence in the record," and

assigned little weight to Monroe's disability opinion because "the doctor is not an examining or treating physician," but found that the opinion "is consistent with the RFC and the objective medical evidence." (Tr. 14.) The ALJ assigned Dr. Laurent's opinion "only some weight as his assessment is vague," (*id.*) and did not explicitly assign any weight to Dr. Gonzales's opinion, stating that Dr. Gonzales "did not quite state an opinion concerning the claimant's impairments. She merely stated that claimant cannot function," (Tr. 15). Additionally, the ALJ apparently did not explicitly assign any weight to Dr. Chow's opinion. Instead, she noted Dr. Chow's conclusion that plaintiff experienced "no physical limitations but should avoid heights, driving, or operating heavy machinery." (Tr. 14, 15, 230.)

The ALJ heard testimony from Ms. Smith concerning her symptoms and limitations and considered her testimony in her RFC determination. The ALJ therefore assessed Ms. Smith's credibility, and in so doing found that her testimony regarding "the intensity, duration and frequency of [Ms. Smith's] alleged seizures, memory loss, and diabetic complications [wa]s not supported by the record." (*Id.*) The ALJ noted that Ms. Smith's mental and physical examinations were within normal limits when she was discharged from SUNY Downstate following EEG monitoring on November 23, 2014, that her diabetes did not result in

complications, and that her anti-seizure medications were being adjusted.  (Tr. 14-15.)  She added that Ms. Smith was involved in the care of her daughter, and the record did not support her testimony that she always traveled with someone and had seizures twice a week.  (Tr. 15.)  Lastly, the ALJ stated that "claimant's testimony regarding poor memory was vague, and the record fails to document specific incidents that demonstrate poor memory."  (*Id.*)  The ALJ thus found that there were no limits in plaintiff's daily functioning that would prevent her from performing simple, routine, and repetitive light work with limitations addressing seizure activity.  (*Id.*)

Moving on to step four, the ALJ found that plaintiff was unable to perform her past relevant work.  (*Id.*)  At step five, using the Medical Vocational Guidelines, the ALJ determined that plaintiff could perform other work existing in significant numbers in the national economy.  (Tr. 15-16.)  On that basis, the ALJ found that Ms. Smith was not disabled from the alleged onset date of June 1, 2012 through April 23, 2015, the date of the decision.  (Tr. 16-17.)

## III. Treating Physician Rule

### A.   Legal Standard

Under SSA regulations, every medical opinion in the administrative record must be evaluated, "[r]egardless of its source," when determining whether a claimant is disabled.  20

19

C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must evaluate each
source, considering factors such as a source's relationship with
the claimant, the supportability of the opinion, the consistency
of the opinion with the record as a whole, the specialization of
the medical source, and any other relevant factors that tend to
support or contradict the medical opinion.  *Id.* § 404.1527(c).
The ALJ must finally determine how much weight to assign each
opinion based on these factors.  *Id.*

        The medical opinion of a treating physician or
psychologist will be given "controlling" weight if that opinion
is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with
the other substantial evidence in [the] record."  *Id.* §
416.927(c)(2); *see also Burgess*, 537 F.3d at 128 (citing *Green-
Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003))
(describing this principle as the "treating physician" rule).  A
treating source is defined as a plaintiff's "own physician,
psychologist, or other acceptable medical source" who has
provided plaintiff "with medical treatment or evaluation and who
has, or has had, an ongoing treatment relationship with [the
plaintiff]."  20 C.F.R. § 404.1502; *see also Bailey v.
Astrue*, 815 F. Supp. 2d 590, 597 (E.D.N.Y. 2011).  Medically
acceptable clinical and laboratory diagnostic techniques include
consideration of a "patient's report of complaints, or history,

[as] an essential diagnostic tool." *Green-Younger*, 335 F.3d at
107.

When a treating physician's opinion is not afforded
controlling weight, the ALJ must "comprehensively set forth
reasons for the weight assigned to a treating physician's
opinion." *Halloran*, 362 F.3d at 33; *see also Snell v. Apfel*,
177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. § 416.927(c)(2)
(requiring SSA to "always give 'good reasons' in [its] notice of
determination or decision for the weight [given to a] treating
source's medical opinion").  The regulations enumerate several
factors that may guide an ALJ's determination of what weight to
give a treating source opinion: "(1) the length, frequency,
nature, and extent of the treating relationship, (2) the
supportability of the treating source opinion, (3) the
consistency of the opinion with the rest of the record, (4) the
specialization of the treating physician, and (5) any other
relevant factors."  20 C.F.R. § 416.927(c)(2)-(6).  Failure "to
provide good reasons for not crediting the opinion of a
claimant's treating physician is a ground for remand." *Sanders
v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *see
also Halloran*, 362 F.3d at 32-33.  These same factors may guide
an ALJ's evaluation of the opinions of non-treating sources.
*Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344

(E.D.N.Y. 2010) (citing SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006)).

**B.    Weight Afforded Treating Physicians**

### 1.   Dr. Gonzales

The ALJ failed to recognize Dr. Gonzales as a treating physician, and likely erred in not giving her opinion controlling weight.  At the very least, the ALJ erred by not providing good reasons for failing to give Dr. Gonzales's opinion controlling weight.

In Dr. Gonzales's March 30, 2015 letter, she confirmed that she had been treating plaintiff for 10 years during which time Ms. Smith had developed and been diagnosed with severe diabetes and seizure disorder, among other conditions.  (Tr. 252.)  Dr. Gonzales also explained that Ms. Smith still struggled with her memory, needed assistance for daily activities, and "cannot function," concluding that plaintiff was unable to hold a job.  (*Id.*)

First, the ALJ failed to expressly recognize Dr. Gonzales as a treating physician.  Dr. Gonzales, however, clearly indicates in her notes that she has treated Ms. Smith for at least 10 years.  (*Id.*)  This misstep likely led to the ALJ's failure to explicitly state the weight she assigned to Dr. Gonzales's assessment.  As a result, the ALJ did not provide any reason—let alone good reason—for not assigning Dr. Gonzales's

opinion controlling weight. The ALJ's analysis is contrary to

Second Circuit law. *See Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993)(holding that the ALJ is required to articulate

the weight assigned to a treating physician's conclusions). In

commenting on a letter from Dr. Gonzales, the ALJ found that

"Dr. Gonzales did not quite state an opinion concerning the

claimant's impairments. She merely stated that claimant cannot

function." (Tr. 15.) This court disagrees. Dr. Gonzales's

clearly opined on the nature and severity of Ms. Smith's

impairments, her symptoms and prognosis, and her inability to

function due to these impairments, concluding that Ms. Smith

"needs assistance for activities of daily living," and "cannot

function" or hold a job. (Tr. 252.) Thus, the ALJ failed to

give good reasons for not giving controlling weight to Dr.

Gonzales's opinion. Moreover, and as discussed below, to the

extent the ALJ determined Dr. Gonzales's treatment notes were

lacking, the ALJ was required to develop the record before

rendering a decision.

The ALJ also failed to expressly consider any of the

regulation's factors to determine the weight assigned to a less-

than-controlling treating physician's opinion. *See* 20 C.F.R. §

404.1527(c)(2)-(6). She did not mention or apparently consider

the length of Ms. Smith's treatment relationship with Dr.

Gonzales, the number of times Ms. Smith had seen Dr. Gonzales,

whether Dr. Gonzales's opinion was consistent with the record, the medical support for her opinion, or the relevance of Dr. Gonzales's specialty to her opinion.

Thus, it was error for the ALJ to determine plaintiff's RFC without giving due consideration to Dr. Gonzales's opinion, or giving good reasons why that opinion was entitled to less-than-controlling weight, and remand is warranted at least on this basis.

### 2. Dr. Laurent

The ALJ similarly did not acknowledge that Dr. Laurent, a neurologist who had treated Ms. Smith since July 2, 2013, was a treating physician. Dr. Laurent's notes indicate that Ms. Smith's medications "are being presently readjusted to control her seizures" and included the assessment that Ms. Smith "may not be able to work because she has seizures [that] are not adequately controlled." (Tr. 251.) Based on the two years Dr. Laurent had been treating Ms. Smith, he believed that her uncontrolled seizures limited her ability to work. The ALJ gave Dr. Laurent's opinion "only some weight as his assessment is vague." (Tr. 14.) Granted, Dr. Laurent qualified his opinion on Ms. Smith's ability to work with the use of "may," but he was clear as to his reasoning: "[plaintiff's] seizures are not adequately controlled" and her medication was being adjusted to that end. (Tr. 251.) Thus, the court disagrees with the ALJ

that this treating source opinion was vague such that it was entitled to less-than-controlling weight. Moreover, and as with the ALJ's weighing of Dr. Gonzales's opinion, the ALJ failed to consider the regulatory factors before assigning any specific weight to Dr. Laurent's opinion, vague or otherwise. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The court finds, therefore, that remand is warranted so the ALJ may consider what weight to give Dr. Laurent's treating source opinion and to explain with good reasons if she chooses to give less-than-controlling weight to his opinions. And, as discussed below, in light of the ALJ's duty to develop the record, the court notes that vagueness alone does not constitute "good reason" not to give a treating physician's opinion controlling weight.

## IV.  Duty to Develop the Record

### A.    Legal Standard

In deciding whether the Commissioner's decision is supported by substantial evidence under 42 U.S.C. § 405(g), the court must be satisfied that the ALJ provided the claimant with a full and fair hearing, including fully and completely developing the administrative record. *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982); *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits. The

25

ALJ therefore owes a duty to the Commissioner as well as to the claimant."(citation omitted)).  The ALJ is required to "make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make" a determination of disability.  42 U.S.C. § 423(d)(5)(B).  In light of this affirmative duty to develop the administrative record, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess*, 537 F.3d at 129 (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).  Moreover, the ALJ has a duty to adequately protect a *pro se* claimant's rights "by ensuring that all of the relevant facts [are] sufficiently developed and considered." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (citing *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

Remand is appropriate where the ALJ has not satisfied this duty to develop the administrative record, and rendered a decision without a complete medical history, including discrediting a treating physician's opinion based on the insufficient record.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (questioning whether ALJ satisfied duty to develop the administrative record when ALJ failed to seek out clarifying information to support a treating source's terse opinion).

### 1. Dr. Gonzales

Both Dr. Gonzales and Ms. Smith noted that their treatment relationship had lasted at least 10 years, including numerous appointments in the years immediately before and after Ms. Smith's onset date. Though there are no notes from these appointments in the record, there is also no evidence that the ALJ requested any of Dr. Gonzales's records. The ALJ found that Dr. Gonzales "did not quite state an opinion", (Tr. 15), even though the March 30, 2015 letter stated that Ms. Smith had seizure disorder and issues with her memory, that she needed assistance with daily activities, and that she could not function or hold a job. (Tr. 252.) "In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79 (2d Cir. 1999)). Though the ALJ is under no obligation to seek additional information where the ALJ already possess a complete medical history, that was not the case here. The court cannot conclude that Dr. Gonzales's report provided a complete accounting of her treatment of plaintiff such that the ALJ was not required to further develop the medical record and to fill the clear gaps.

### 2. Dr. Laurent

Similarly, the ALJ did not attempt to clarify Dr. Laurent's "vague" opinion, assigning it "some" weight without seeking additional evidence or clarification.  Before relying on a vague treating physician's opinion, the ALJ should contact the treating physician and seek clarification of his report.  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013); s*ee also* 20 C.F.R. § 416.912(d) (2012).  As with Dr. Gonzales, the ALJ failed to fulfill her duty to develop the record, by seeking a detailed assessment or further clarifying information that could have resolved any ambiguity.  When the ALJ rejects the findings of a treating physician because they were conclusory or not supported by specific clinical findings, he should direct a *pro se* claimant to obtain a more detailed statement from the treating physician in order to develop "all the relevant facts."  *Echevarria*, 685 F.2d at 756 ("[T]he proper course would have been to direct [the *pro se* claimant] to obtain a more detailed statement from the treating physicians."); *see also Hankerson*, 636 F.2d at 896 ("[B]asic principles of fairness require that [the ALJ] inform the [*pro se*] claimant of his proposed action and give him an opportunity to obtain a more detailed statement.").

The record contains no indication that the ALJ attempted to fulfill her duty to develop the record.  There are many references to Ms. Smith's ongoing treatment by Dr. Laurent,

however no treatment notes or records from any of these appointments appear in the record, nor is there evidence that the ALJ requested such records. Evidence that indicates ongoing treatment includes: Dr. Laurent's note where he recognized that Smith had been visiting the neurology clinic at Interfaith since July 2, 2013; Ms. Smith telling the consultative examiners and Dr. Chow about Dr. Laurent in August and September 2013; Ms. Smith referencing an upcoming appointment at Interfaith on a November 2013 amended Disability Report; and Dr. Grant's instruction to Ms. Smith in November 2014 to call Dr. Laurent's office to make an appointment after Smith underwent EEG monitoring at SUNY Downstate. (*See, e.g.*, Tr. 153–57, 222, 227, 240, 251.)

The failure to address these gaps in the record do not satisfy the ALJ's duty to fully develop the record and serves as further basis for remand. *Selian*, 708 F.3d at 420 (citing *Snell*, 177 F.3d at 133).

### B. Credibility Analysis

Where a claimant supports her applications with claims of subjective symptoms, "the ALJ has discretion to evaluate the credibility of the claimant to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the [symptom] alleged." *Lugo v. Apfel*, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998). Where plaintiff

testified to experiencing dizziness and a frequency of seizures, the ALJ was entitled to evaluate plaintiff's credibility in light of the record evidence.  A court must uphold the Commissioner's decision to discount a claimant's subjective complaints if the finding is supported by substantial evidence. *Aponte v. Sec'y Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); *see* 42. U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  However, the ALJ's failure to fully develop the record by obtaining additional notes and records of Dr. Gonzales and Dr. Laurent indicates that her decision regarding Ms. Smith's credibility was not based on substantial evidence.  *Rosa*, 168 F.3d at 82 n.7; *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277 (S.D.N.Y. 2009).  Even though the ALJ considered plaintiff's subjective complaints, the ALJ discredited Ms. Smith's claims without the benefit of a complete medical record.  Thus, her credibility determination warrants reconsideration on remand.  *See Alcantara*, 667 F. Supp. 2d. at 277; *Lugo*, 20 F. Supp. 2d at 663.

Even with a complete record, when a claimant's testimony and the medical evidence conflict, the ALJ must employ a two-step evaluation to assess the reliability of the claimant's testimony.  *See* 20 C.F.R. § 404.1529(c)(3)(2011); SSR 96-7p, 1996 WL 374186 (July 2, 1996)("An individual's statements

about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). First, the ALJ must determine if the claimant has an underlying impairment that could cause the alleged symptoms. 20 C.F.R. § 404.1529(c)(3). If so, then "the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective symptom] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 183; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. The ALJ may consider subjective symptoms when determining a claimant's RFC and credibility if there are some objective medical findings to support the allegations. *Cichocki*, 534 F. App'x at 74-75; *see also Meadors*, 370 F. App'x at 183; *Snell*, 177 F.3d at 135.

When evaluating an individual's symptoms, the ALJ must consider the following seven factors:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the

> claimant's] pain or other symptoms; (vi) Any measures
> [the claimant] use[s] or ha[s] used to relieve [the
> claimant's] pain or other symptoms . . . ; and (vii)
> Other factors concerning [the claimant's] functional
> limitations and restrictions due to pain or other
> symptoms.

20 C.F.R. § 404.1529(c)(3)(i-vii). The ALJ shall address evidence of those factors to the extent available. 20 C.F.R. § 404.1529(c)(4); *Meadors*, 370 F. App'x at 183. Additionally, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see also Cichocki*, 534 F. App'x at 76.

Though the ALJ appears to have considered at least several of the factors in 20 C.F.R. § 404.1529(c)(3), the record indicates her questioning of plaintiff at the hearing as to her specific symptoms was less than adequate given the circumstances as discussed below. An ALJ's duty to develop the record includes the duty to obtain a plaintiff's medical records as well as the duty "to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Devora v. Barnhart*, 205 F. Supp. 2d 164, 166 (S.D.N.Y. 2002)

(citing *Cruz*, 912 F.2d at 11 and *Echevarria*, 685 F.2d at 755–56).

Here, in addition to her failure to develop the medical record, the ALJ did not adequately question the plaintiff about her subjective complaints. When the ALJ asked plaintiff to tell her about her memory difficulties, plaintiff testified that she struggled to remember events that took place within the past week and that she often could not remember the things she did or that other people did. (Tr. 34.) Plaintiff's answer was clearly not "something specific" as the ALJ had asked, despite plaintiff's apparent best efforts, but the ALJ did not follow up further or seek medical records regarding plaintiff's cognitive issues, and instead concluded that plaintiff's testimony was vague.[4] (Tr. 15.) Given the failure to sufficiently question plaintiff about her subjective complaints, remand is appropriate. *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 352 (E.D.N.Y. 2010) (finding remand appropriate when ALJ did not question plaintiff further at the hearing to resolve uncertainties on his subjective symptoms and how they affected plaintiff's daily functioning).

---

[4]     It is not surprising that a claimant with memory issues as plaintiff claims would have trouble recalling a specific instance when her memory failed or interfered with her daily activities.

**CONCLUSION**

For the foregoing reasons, the court finds that the ALJ erred in deciding plaintiff's SSDI claims. The case is therefore remanded for further proceedings. Specifically, the ALJ should, consistent with the reasoning in this Order:

(1) develop the record to properly assess whether or not to afford controlling weight to Dr. Gonzales and Dr. Laurent; if the ALJ declines to afford controlling weight to the treating physicians or consultative examiners, the ALJ should provide a clear statement and "good reasons;"

(2) render a credibility determination with adequate explanations as to plaintiff's testimony, with the benefit of a complete medical record.

**SO ORDERED.**

Dated:     August 20, 2019
           Brooklyn, New York

                            _____/s/_____
                            **KIYO A. MATSUMOTO**
                            United States District Judge
                            Eastern District of New York